IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 3:19-CR-95-TAV-HBG-2 |
| TAYLOR MEADOWS, ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court upon Defendant Taylor Meadows' Motion to Suppress and Memorandum in Support [Doc. 26], filed on August 23, 2019. The Government filed a response in opposition to the motion [Doc. 27] on September 9, 2019.

An evidentiary hearing was held on Defendant's Motion to Suppress on September 12, 2019. [Doc. 29]. Assistant United States Attorney Brent Jones appeared on behalf of the Government. Attorney Mark Brown represented Defendant Meadows, who was also present. After hearing the arguments of counsel, the Court took the motion under advisement.

Accordingly, after reviewing the parties' briefs and arguments, the evidence and exhibits presented at the hearing, and the relevant legal authorities, the Court recommends that Defendant's Motion to Suppress [Doc. 26] be denied.

**I.    POSITIONS OF THE PARTIES**

Defendant Meadows is charged [Doc. 3] with conspiring to distribute and possess with intent to distribute forty (40) grams or more of a mixture and substance containing a detectable

amount of fentanyl and heroin (Count 1), as well as knowingly possessing a firearm in furtherance of a drug trafficking crime (Count 2). These charges arise out of the execution of a search warrant on April 5, 2019 at the residence that Defendant Meadows shared with Codefendant Daniels.

Defendant seeks [Doc. 26] to suppress and exclude all firearms seized during the execution of the search warrant at her residence at 7721 Gilmore Lane, Corryton, Tennessee ("7721 Gilmore Lane"), claiming that the seizure of such weapons was based on a search warrant lacking particularity, which was overbroad. Defendant asserts that the affidavit of Knox County Sheriff's Office Detective Tyler Ballard did not provide probable cause to search for firearms, as it included only broad statements that drug dealers typically possess firearms, and did not include any information from a confidential informant tying guns to the residence or Codefendant Daniels.

The Government responds [Doc. 27] that the firearms were lawfully recovered from Defendant's residence, as there was probable cause to search due to the observation of multiple controlled buys of heroin and the specific inclusion of firearms in the search warrant. Additionally, the Government maintains that it was proper for Detective Ballard to state that, based upon his training and experience, it is common for drug traffickers to possess firearms. Lastly, the Government claims that even if the firearms were not described with particularity in the search warrant, they could be seized as being reasonably related to the possession of controlled substances or deemed admissible through the plain view doctrine.

## II. SUMMARY OF TESTIMONY

At the September 12 hearing, the Government presented the testimony of Knox County Sheriff's Office Detective Tyler Ballard. Defendant presented no witnesses. The Government also introduced as Exhibit 1 the search warrant and supporting affidavit at issue. The Court summarizes the witness's testimony and introduced exhibit as follows.

2

The Government first presented the testimony of Detective Ballard, who has been a detective in the narcotics unit of the Knox County Sheriff's Office for approximately two years. Detective Ballard testified that he was the lead detective in the investigation of Defendant and Codefendant Daniels. Detective Ballard stated that he received information from a confidential informant ("CI") that Codefendant Daniels was her source of supply for heroin, and he then utilized the CI to perform two controlled buys from Codefendant Daniels. In the first controlled buy, Codefendant Daniels was witnessed leaving his residence at 7721 Gilmore Lane and arriving at a commercial parking lot, where he then delivered the heroin to the CI. Following the first controlled buy, Detective Ballard testified that law enforcement organized a second controlled buy, where Codefendant Daniels instructed the CI to pick up heroin from under the cushion of a chair on the front porch at 7721 Gilmore Lane. In both instances, the CI was searched prior to the controlled buy and subsequently obtained heroin from Codefendant Daniels.

Based upon this information, Detective Ballard testified that he obtained a search warrant for the residence at 7721 Gilmore Lane from Chief Magistrate Christopher Rowe of the General Sessions Court for Knox County. Detective Ballard stated that he had reviewed his submitted affidavit and the search warrant prior to the hearing. Detective Ballard testified that he did not see Codefendant Daniels possessing a firearm during either of the controlled buys. However, Detective Ballard stated that he requested to search for firearms in the search warrant because, based upon his training and experience as a narcotics investigator, it is common for drug dealers to carry firearms.

Detective Ballard stated that he was present for the search of Defendant's residence on April 5, 2019, and law enforcement found 56 grams of heroin, which contained fentanyl; 99 prescription drugs, including a mixture of oxymorphone and oxycodone or hydrocodone; a small

3

amount of marijuana and drug paraphernalia; four guns, two of which were stolen; and approximately $14,000 in cash. Detective Ballard testified that Defendant and Codefendant Daniels were present and located in the bedroom at the time of the search. Additionally, Detective Ballard testified that some of the hydrocodone pills were found in the bedroom, and three firearms were found in the drawer of a nightstand on Codefendant Daniels side of the bed, while one was found in the drawer of a nightstand on Defendant's side of the bed. Detective Ballard stated that both firearms and drugs could potentially have been found in the drawer of the nightstand. Further, Detective Ballard testified that at the time of the search, he was aware that Codefendant Daniels was a multi-convicted felon in Knox County for the distribution of a Schedule I controlled substance, as well as that Defendant was under indictment for aggravated assault.

On cross-examination, Detective Ballard stated that the drawers of the nightstand were initially closed before being searched. Next, Detective Ballard testified that the hydrocodone pills were found in the nightstand on Codefendant Daniels' side of the bed, while marijuana was found in the nightstand on Defendant's side, but that no heroin was found in the bedroom. Detective Ballard stated that it was possible that Codefendant Daniels had a firearm during the first controlled buy, but he did not see, and the CI did not mention, a firearm. Detective Ballard further testified that he had no direct knowledge that there were firearms within 7721 Gilmore Lane, and the CI had never been inside the residence.

Detective Ballard stated that an attorney assisted him in preparing the affidavit for the search warrant based upon his provided information, but he reviewed the affidavit and that it was 100% correct. Detective Ballard testified that the information in the affidavit stemmed from his reports of the investigation. Additionally, Detective Ballard clarified that there were only two controlled buys at issue in this case.

4

## III. FACTUAL FINDINGS

The following factual findings are taken from the testimony at the suppression hearing, as well as the submitted search warrant and supporting affidavit. On April 4, 2012, Detective Ballard obtained a search warrant from Chief Magistrate Christopher Rowe of the General Session Court for Knox County for "7721 Gilmore Lane, Corryton, Knox County, Tennessee." [Exh. 1]

The affidavit in support of the search warrant relates that Detective Ballard was told by a CI that Codefendant Daniels sold heroin in Knox County, and that his girlfriend, Defendant Meadows, would sell heroin if he was out of town. The affidavit details the CI's first controlled buy from Codefendant Daniels, where law enforcement witnessed Codefendant Daniels leaving 7721 Gilmore Lane, the CI met Codefendant Daniels in a commercial parking lot, and the CI walked up to Codefendant Daniels' vehicle and obtained heroin. Additionally, the affidavit details the CI's second controlled buy from Codefendant Daniels, where the CI was instructed to retrieve heroin from under a cushion on the front porch of 7721 Gilmore Lane.

In pertinent part, Detective Ballard also states in the affidavit that, based upon his training and experience, that drug dealers often hide contraband, proceeds of drug sales, and records of drug transactions in secure locations such as their own residences, as well as that:

> Drug dealers commonly have in their possession or in their residences and businesses firearms, including handguns, pistols, revolvers, shotguns, rifles, machine guns, and other weapons. These weapons are used to protect and secure their property, drugs and profits from robbers and thieves as drug dealers are often times the victims of robberies and 'rip off's' during a drug transaction. Also, because such firearms are in demand by those in the drug trade, such items are often times bartered for drugs. Court decisions in criminal drug prosecutions have recognized that the presence of firearms is relevant and probative as such are tools of the drug trade.

[Exh. 1]. Lastly, the affidavit also states that Defendant resides at 7721 Gilmore Lane. Therefore, Detective Ballard averred that it was more probable than not that Codefendant Daniels and

Defendant reside at 7721 Gilmore Lane, Codefendant Daniels possesses and sells heroin from this address, and evidence of the possession and sale of illegal narcotics was located at this address.

The search warrant authorized the search of 7721 Gilmore Lane for, in relevant part, all controlled substances, controlled substances paraphernalia, and "any weapons" found and associated with Defendant and Codefendant Daniels. [*Id.*]. After the search of the residence on April 5, 2019, law enforcement seized 56 grams of heroin, which contained fentanyl; 99 prescription drugs, including a mixture of oxymorphone and oxycodone or hydrocodone; a small amount of marijuana and drug paraphernalia; four guns, two of which were stolen; and approximately $14,000 in cash. Defendant was subsequently arrested, along with Codefendant Daniels, following the execution of the search warrant at her residence.

## IV. ANALYSIS

Defendant asserts that the state search warrant issued on April 4, 2019 lacked particularity, as nothing in the search warrant connected the residence at 7721 Gilmore Lane to the presence of firearms. Therefore, Defendant claims that the search warrant was overly broad because it authorized the search and seizure of firearms solely based on Detective Ballard's affidavit stating that it is common for drug dealers to use firearms as tools of the drug trade.

A constitutionally sufficient search warrant requires that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *Stanford v. Texas*, 379 U.S. 476, 485–86 (1965). The particularity requirement "encompasses two separate concerns – whether the warrant supplies adequate information to guide officers in selecting what items to seize, and whether the category of items specified in the warrant is too broad because it includes articles that should not be seized." *United States v. Evers*, 669 F.3d 645, 651–52 (6th Cir. 2012). However, the Sixth Circuit has recognized that "the degree of specificity

required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989).

First, the Court finds that probable cause existed to search the residence at 7721 Gilmore Lane for narcotics, as "a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012). The affidavit in support of the search warrant detailed that Defendant's residence was 7721 Gilmore Lane, and that the CI purchased heroin from Codefendant Daniels by retrieving it from under a cushion on the front porch of the residence. *Compare United States v. Goward*, 188 F. App'x 355, 359 (6th Cir. 2006) (affirming nexus when affidavit showed defendant was involved in marijuana trafficking conspiracy, marijuana sales were observed by an undercover officer, the defendant lived at the residence to be searched, and the affiant stated that based upon years of experience and training, he knew drug dealers to keep drugs, paraphernalia, and firearms at their residences); *with United States v. White*, No. 2:14-CR-20018-JTF, 2014 WL 5822848, at *4 (W.D. Tenn. Nov. 10, 2014) (finding an affidavit in support of a search warrant did not establish a nexus that the property was connected to the criminal activity at issue, as "the affidavit at no point provides information that the property is the Defendant's residence . . . or that the Defendant has any connection or interest in it what so ever"), *aff'd*, 874 F.3d 490 (6th Cir. 2017).

Therefore, the only challenge to the search warrant is whether the authorization to search for firearms in the warrant was overly broad. Ultimately, "[t]he degree of specificity required in a search warrant varies depending on (1) 'what information is reasonably available to the police,' *United States v. Ford*, 184 F.3d 566, 575 (6th Cir. 1999), (2) 'the crime involved,' as well as (3)

7

'the types of items sought,' *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011)." *United States v. Raglin*, 663 F. App'x 409, 412 (6th Cir. 2012).

Here, Detective Ballard's affidavit, which stated that firearms are commonly possessed by drug dealers, also established probable cause to believe that firearms were present at 7721 Gilmore Lane. The affidavit provided probable cause to believe that Codefendant Daniels was trafficking heroin out of 7721 Gilmore Lane, as well as detailed the two controlled buys performed by the CI. Although Detective Ballard and law enforcement were not aware of Codefendant Daniels using firearms, or the presence of firearms, the search warrant was intended to look for evidence of the possession and sale of illegal narcotics at the residence. *Id.* ("In these circumstances, there was not much more [Detective] Duane could have said than what he did say: that the officers were looking for drug trafficking.").

Next, Detective Ballard properly stated that he was looking for evidence of drug trafficking, and that based on his training and experience, drug traffickers often utilize firearms "to protect and secure their property, drugs, and profits," as well as that such items are "often bartered for drugs." [Exh. 1]. As the Sixth Circuit stated in *Raglin*:

> Drug trafficking is a crime that often generates the same distinctive evidence from case to case. That's why this police office and many others have a generic list of items to look for in this kind of investigation. There may be some cases in which, because of certain facts uncovered in the investigation, the police will be seeking unusual or highly specific pieces of evidence in order to tie the defendant to drug trafficking. But in a run-of-the-mine case like Raglin's, where the police have generic, but clear, information about the suspect's trafficking activity, it's difficult to see the difference between a warrant that seeks "evidence related to the illegal use/s[ale]/transfer of illegal narcotics" and a warrant that seeks "evidence of narcotics trafficking, including drugs, cash, weapons, scales, and other drug-trafficking paraphernalia."

663 F. App'x at 412–413. Therefore, the Court finds that the search warrant properly authorized the search of 7721 Gilmore Lane for firearms as evidence of drug trafficking. In his affidavit,

8

Detective Ballard detailed the information supporting a finding of probable cause that Codefendant Daniels was engaging in drug trafficking out of the residence, as well as, based upon his training and experience, that drug dealers commonly utilize firearms. *See United States v. Calhoun*, No. 18-20820, 2019 WL 3334567, at *5 (E.D. Mich. July 25, 2019) (upholding search warrant to search for firearms, in part due to "[g]iven Zirkle's training in narcotics cases and over 17 years of law enforcement experience, she knew that drug traffickers commonly store drugs, drug paraphernalia, money and firearms at the places they reside"). Specific evidence was not required to be presented that law enforcement was aware that firearms were present at 7721 Gilmore Lane, or that Codefendant Daniels used a firearm while selling the CI heroin. The affidavit established probable cause to believe that drugs would be present at the residence, and the warrant was sufficiently particular in listing that "any weapons" found could be seized. [Exh. 1]; *see United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991) (holding "[t]he use of a generic term or a general description is not per se violative of the fourt amendment," as "[w]hen a more specific description of the items to be seized is unavailable, a general description will suffice").

Here, Defendant cites *United States v. Gardner*, 537 F.2d 861 (6th Cir. 1976), where the Sixth Circuit held that a search warrant failed to meet the particularity requirement because it authorized the seizure of "all firearms and ammunition," and "probable cause existed, if at all, to search solely for a .38 caliber pistol that was allegedly used in an armed robbery and murder." *Id.* at 862. As the Court has already detailed, however, Detective Ballard's affidavit established probable cause to search for evidence of drug trafficking at 7721 Gilmore Lane. The Sixth Circuit in *Raglin* noted the unique nature of drug trafficking, and that it "often generates the same distinctive evidence from case to case." 663 F. App'x at 412. Therefore, "the warrant was as specific as the circumstances permitted since the officers were looking for *any* weapons, not just

9

stolen weapons." *United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001) (discussing *Gardner*), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008), *as recognized in United States v. Evans*, 378 F. App'x 485, 489 n.5 (6th Cir. 2010).

Accordingly, the Court finds that the search warrant was not overbroad with respect to the search and seizure of firearms at the residence. *See, e.g.*, *United States v. Kia*, 170 F. App'x 457, 461 (9th Cir. 2006) (holding affiant's "statement that, based on his training and experience, drug dealers frequently have firearms to protect themselves from being 'ripped off' by drug customers or other drug dealers established a sufficient nexus between narcotics trafficking and [defendant's] possession of weapon" and rejecting defendant's argument that the search warrant was overly broad); *United States v. Starks*, No. 09-CR-0027-CVE, 2009 WL 1149157, at *4 (N.D. Okla. Apr. 28, 2009) ("While it may not be appropriate to include a request to search for firearms in every search warrant for illegal drugs, Hill had a substantial basis to believe that defendant was selling drugs from his home and, combined with her training and experience, this provided enough information for Hill to also list firearms as a specific item in the search warrant.").

Further, even if there was no explicit reference to or independent probable cause to search for firearms in the search warrant, "[i]t is well settled that firearms may be seized pursuant to a search warrant directed at narcotics," as "[f]irearms are evidence of drug trafficking." *United States v. Davis*, 900 F.2d 260 (Table), 1990 WL 51399, at *1 (6th Cir. 1990) (citing *United States v. Marino*, 658 F.2d 1120 (6th Cir. 1981)); *see also United States v. Case*, 503 F. App'x 463, 466 (6th Cir. 2012) (holding although they were not listed in the search warrant, "the remaining items seized pursuant to the warrant, *i.e.*, the drugs, paraphernalia, and firearms, clearly fall within the scope of 'marijuana, morphine, other drugs, [and] paraphernalia' as listed on the search warrant").

10

Detective Ballard testified that the firearms were found in dressers in the bedroom, which was a location that he would have searched for drugs. The Sixth Circuit has repeatedly held that "guns are 'tools of the trade' in drug transactions." *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001) (quoting *United States v. Arnott*, 704 F.2d 322, 326 (6th Cir. 1983)).[1]

## V. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds that no Fourth Amendment violation occurred in this case, and the search warrant was valid and not overbroad, because the supporting affidavit established probable cause to search the residence for controlled substances and firearms. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Suppress [**Doc. 26**] be **DENIED**.[2]

Respectfully submitted,

_____
United States Magistrate Judge

---

[1] As the Court has found that the firearms could have been seized pursuant to the search warrant authorization regarding controlled substances, the Court thus declines to examine whether the firearms were properly seized because they were found in plain view with the knowledge that Codefendant Daniels was a convicted felon.

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).